**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

LUIS AUGUSTO CAMPI YSTILLARTE,

Petitioner,

v.

WARDEN et al.,

Respondents.

Case No. 5:26-cv-06297-DFM

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

On October 23, 2026, Petitioner Luis Augusto Campi Ystillarte, an immigration detainee at the Desert View Facility in Adelanto, California, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). The Petition alleges that Respondents arrested and detained Petitioner without notice or an opportunity to be heard in violation of the Fifth Amendment's Due Process Clause, and that Respondents did not comply with the procedures of 8 U.S.C. § 1226(a). See id. ¶¶ 34-41. Petitioner seeks immediate release; declaratory relief; an injunction against re-detention without notice and a pre-deprivation hearing; and attorney's fees under the Equal Access to Justice Act. See id. at 11. Respondents filed a Response. See Dkt. 9 ("Response"). Petitioner filed a reply. See Dkt. 10 ("Reply").

For the reasons set forth below, the Petition is **GRANTED** in part.

## II. BACKGROUND

Petitioner is a native and citizen of Venezuela. See Dkt. 9-1 ("Form I-213") at 1; Petition ¶ 1 & Ex. A. On September 15, 2021, U.S. Customs and Border Protection admitted him at Miami International Airport as a nonimmigrant visitor with authorization to remain until March 14, 2022. See Form I-213 at 3; Petition ¶ 2 & Ex. A. In February or March 2022, Petitioner filed a Form I-589 application for asylum and withholding of removal with U.S. Citizenship and Immigration Services ("USCIS"). See Form I-213 at 3; Petition ¶ 3 & Ex. B.

Petitioner alleges that while waiting for his asylum claim to be adjudicated, he worked at JR Unlimited Services in Miami, Florida and paid taxes on his income. See Petition ¶ 5. Petitioner alleges that before his arrest, he was a longtime resident of Hialeah, Florida. Id. ¶ 1. Petitioner alleges that he is also an award-winning filmmaker who works as a stage director for actors. Id. ¶ 7. Petitioner alleges that he has lived his life openly in the United States for over five years, working to support his family and friends and traveling freely throughout the country. Id. ¶ 6.

On August 26, 2026, Petitioner flew to Los Angeles for a film award. Id. ¶ 7. Petitioner's flight itinerary came to the attention of U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"). See Form I-213 at 2. "Using biographical information, ERO Los Angeles established sufficient reasonable suspicion to encounter and interview [Petitioner] regarding his presence in the United States." Id. ICE officers arrived at the Los Angeles International Airport at approximately 09:00. See id. at 3. Petitioner's flight was scheduled to arrive at around 11:36. See id. At approximately 11:40, ICE officers stationed near the arrival gate observed an individual matching Petitioner's description. See id. The officers approached Petitioner, who voluntarily admitted that he is a citizen and national of

Venezuela. See id. The officers arrested Petitioner and transported him to the ICE Los Angeles Field Office for processing. See id.

A deportation officer recorded on the Form I-213 that Petitioner has pending applications before USCIS. See id. The same section states that Petitioner does not claim fear of torture or persecution if returned to Venezuela. See id. The Form I-213 records that Petitioner was presented with a Form I-200 administrative warrant and issued a Form I-862 Notice to Appear, charging him as removable under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA").[1] See id. at 3-4. The Form I-213 notes that Petitioner was offered and declined Incentivized Voluntary Departure. See id. at 4. The Form I-213 states that Petitioner "will remain in ERO custody pending his removal proceedings." Id.

Petitioner remains in immigration detention. See Petition ¶ 11. Nothing in the record indicates that an IJ has held a custody redetermination hearing, that Petitioner has a final order of removal, or that Petitioner has any criminal history. See Reply at 5-6.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001). The record confirms, that Petitioner was admitted, that he is charged as removable under INA section 237(a)(1)(B), and that his detention is discretionary under 8 U.S.C. § 1226(a). See Petition ¶¶ 2, 38-39; Response at 2; Form I-213 at 3-4.

[1] The record does not include a Form I-200 or a Form I-862.

## A. Exhaustion

Respondents contend that Petitioner is properly detained pending potential § 1226(a) bond proceedings. See Response at 2. Respondents further contend that requiring Petitioner to first pursue administrative remedies in immigration court is not futile because the Ninth Circuit's decision in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026), has resolved within the circuit that noncitizens apprehended in the interior are detained under § 1226(a) and may seek release on bond. See id.

A noncitizen habeas petitioner ordinarily "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the [Board of Immigration Appeals ("BIA")] on appeal." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (citation omitted). In determining whether exhaustion is required for a constitutional question, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995). When a petitioner does not exhaust, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo, 646 F.3d at 1160.

Generally, prudential exhaustion may be required when the following factors are met: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). Courts may nonetheless waive exhaustion if the petitioner demonstrates that

"administrative remedies are inadequate or not efficacious," "pursuit of administrative remedies would be a futile gesture," "irreparable injury will result," or "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Notably, Petitioner contests Respondents' compliance with § 1226(a), arguing that Respondents have not complied with the procedures of the statute Respondents invoke in arguing for dismissal. See Petition ¶¶ 38-41; Response at 2-3; Reply at 2, 6-8. Though Respondents state that ERO officers issued Petitioner a warrant, see Response at 1, Respondents did not lodge a copy of a Form I-200 administrative warrant. Petitioner argues that he was not provided with a prompt initial custody determination hearing at the outset of his detention, see Petition ¶ 40, and Respondents did not contest the same.

More fundamentally, to the extent Respondents argue exhaustion, the Court declines to dismiss Petitioner's claim that he was detained without pre-deprivation notice and a hearing in violation of due process. Even if the Court assumed that the Puga factors support requiring exhaustion as to this claim, the Court would waive exhaustion on futility grounds. A post-deprivation bond hearing would not address Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards before he was deprived of his liberty. See Zhao v. Janecha, No. 26-5025, 2026 WL 2666865, at *3 (C.D. Cal. Sept. 9, 2026) ("The present Petition claims a deprivation of constitutional due process, a claim not within the jurisdiction of the immigration judge or the Board of Immigration Appeals."); Yu v. Giles, No. 26-4692, 2026 WL 2455945, at *3 (C.D. Cal. Aug. 21, 2026) (same); R.N.G. v. Semaia, 838 F. Supp. 3d 1035, 1043 (C.D. Cal. 2026) (same). That Rodriguez Vazquez confirms the availability of a § 1226(a) bond hearing means only that post-deprivation process is available, not that the immigration court can remedy the absence of pre-deprivation process.

## B. Petitioner's Due Process Rights Were Violated

Petitioner asserts that he holds a protected liberty interest, and that due process required notice and a hearing before Respondents arrested him. See Petition ¶¶ 34-36. On this record, the Court agrees.

The Fifth Amendment Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit have often found that this principle extends to noncitizens who have overstayed their visa. See Orozco-Salazar v. Warden, No. 26-4555, 2026 WL 2497334, at *3 (C.D. Cal. Aug. 25, 2026) (collecting cases); Tello Vazquez v. Mullin, No. 26-2039, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

Respondents argue that Petitioner is properly detained because this is his first immigration detention. See Response at 2. The cases cited above did not turn on a prior detention and subsequent release from custody. Instead, they rest on the government's decision to admit the noncitizen and then leave them

at liberty after their authorized stay expired. See Tello Vazquez, 2026 WL 1911507, at *2. Here, the government admitted Petitioner after inspection in 2021, had his asylum application on file from 2022, and took no action for over four years after his authorized stay expired. See Form I-213 at 2-3. Courts in this district have granted relief to noncitizens in the same position who, like Petitioner, had never been detained before their arrest. See Yao v. Janecka, No. 26-4735, 2026 WL 2666861, at *6 (C.D. Cal. Sept. 10, 2026).

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

Starting with the first Mathews factor, Petitioner's private interest in freedom from detention is substantial. Ninth Circuit precedent requires the Court to also consider "the process [Petitioner] received during this time" and "the further process that was available to him." Id. at 1208. It is undisputed that Petitioner did not receive a pre-deprivation hearing, and the record does not show that he has received any hearing since. Respondents point out that a bond hearing under § 1226(a) is available to Petitioner. See Response at 2-3. The Court accounts for that further process and will not "overstate the strength of [Petitioner's] showing." Rodriguez Diaz, 53 F.4th at 1207-08. But process that is available and has not occurred does little to reduce the weight of an

interest already impaired by over two months of detention. The first Mathews factor weighs in Petitioner's favor.

Turning to the second Mathews factor, the risk of erroneous deprivation is significant. Respondents took Petitioner into custody without pre-deprivation notice or a pre-deprivation hearing. Petitioner was brought to ICE's attention the day before his arrest, and no neutral decision-maker has assessed whether Petitioner presents a risk of flight or danger. A pre-deprivation hearing would have allowed Petitioner to present his lawful admission, his pending asylum application, his employment, and his residence and community ties before he lost his liberty. The second Mathews factor favors Petitioner.

The third Mathews factor requires the Court to consider the government's interest, and the Court is mindful that in the immigration detention context, it "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." Rodriguez Diaz, 53 F.4th at 1208 (internal quotation marks and citation omitted). "This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." Id. However, while the government has a "significant" interest in enforcing its immigration laws, see id. at 1209, that interest is diminished where, as here, Petitioner has a pending asylum application filed years ago, lived in the community for nearly five years, and has no criminal history.

The effort and cost required to provide Petitioner with procedural safeguards before detention—rather than simply detaining him without a hearing—is minimal. See E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it

would have required the expenditure of finite resources (money and time) to provide [p]etitioner notice and hearing on [alternatives to detention] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue"). Accordingly, the third Mathews factor weighs somewhat in Petitioner's favor.

On balance, the Mathews factors favor Petitioner. Respondents' detention of Petitioner without a pre-deprivation hearing violated his procedural due process rights.

## C. Remedy

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy. After applying the Mathews test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (C.D. Cal. 2025).

Here, nothing in the record suggests such urgency. ICE officers knew in advance that Petitioner would be traveling to Los Angeles on a domestic flight, and the officers arrived at the airport hours in advance of Petitioner's arrival time. See Form I-213 at 2-3. A Form I-200 warrant is an administrative warrant, not a judicial warrant, but even assuming one was issued, the record indicates it was not preceded by notice or any opportunity to be heard. See id. at 3. On this record, Petitioner has no criminal history, no record of failing to appear before any court or agency, and an asylum application that has been pending since 2022. See Form I-213 at 2-3; Petition ¶ 3. The Court finds that

Petitioner's detention without a pre-deprivation hearing violated his due process rights and rendered his detention unlawful. When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect. See Wamsley, 795 F. Supp. 3d at 1324.

Respondents argue that Petitioner is entitled at most to a bond hearing before an immigration judge under § 1226(a), or to a further bond hearing after 180 days of detention. See Response at 2-3. This argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid." Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also Wamsley, 795 F. Supp. 3d at 1324; Yao, 2026 WL 2666861, at *6 (ordering a noncitizen released where she was admitted to the United States on a nonimmigrant visa in 2024, timely applied for asylum, obtained work authorization, and was detained in July 2026 at Los Angeles International Airport upon arrival from a domestic flight without a judicial warrant, prior notice, or a hearing; collecting cases finding that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner will have already suffered the potentially erroneous detention). On this record, release is the appropriate remedy to place Petitioner in the position he would have enjoyed absent the due process violation. See Yao, 2026 WL 2666861, at *6. That disposition affords complete relief, so the Court declines to reach Petitioner's statutory claim.

The Court's order is limited to the violation that has occurred. The Court declines to order Petitioner's additionally requested relief of an injunction prohibiting Respondents from re-detaining him "unless he is first provided with notice, a pre-deprivation hearing, and an opportunity to be heard." Petition at 11. The Court takes no position on whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the

future. That question is not squarely presented on this record and would depend on facts and circumstances not currently before the Court. This order addresses only the lawfulness of Petitioner's current detention, which began on August 26, 2026, and which the Court concludes violates the Fifth Amendment's Due Process Clause. Nothing in this order shall be construed as limiting Respondents' ability to lawfully re-detain Petitioner in the future in compliance with all applicable authorities and upon affording Petitioner all process he is due.

## IV. ORDER

For the foregoing reasons, IT IS ORDERED that:

1. The Petition (Dkt. 1) is **GRANTED** in part on Count One.

2. Respondents shall immediately release Petitioner Luis Augusto Campi Ystillarte (A# 240-678-873) from custody. Within three (3) days, Respondents shall file a status report confirming compliance.

3. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

4. Petitioner's remaining requests are **DENIED**.

Date: November 5, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge